**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |
|---|---|
| JAMES HENRY ROCHESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:24-CV-10210-AK |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

_____

**MEMORANDUM AND ORDER ON MOTION FOR ORDER REVERSING THE**
**COMMISSIONER'S DECISION**

**ANGEL KELLEY, D.J.**

Claimant James Henry Rochester ("Rochester") seeks judicial review of the denial of his

application for disability insurance benefits dated May 25, 2021, by Commissioner Martin

O'Malley, ("the Commissioner") of the Social Security Administration ("the SSA"). Before this

Court are (1) Rochester's Motion for Order Reversing Decision of Commissioner [Dkt. 10],

arguing the Administrative Law Judge ("ALJ") erred in his May 9, 2023, decision; (2) the

Commissioner's Motion for Order Affirming Decision of Commissioner [Dkt. 13]; and (3) the

exhaustive administrative record [Dkt. 7]. For the following reasons, Rochester's Motion for

Order Reversing Decision of Commissioner [Dkt. 10] is **DENIED** and the Commissioner's

Motion for Order Affirming Decision of Commissioner [Dkt. 13] is **GRANTED**.

**I.    BACKGROUND**

Claimant Rochester was born on November 1, 1969. [Dkt. 7 at 197]. Rochester was fifty

years old at the time of the alleged onset of his disability, June 8, 2020. [Id. at 23, 31]. While

Rochester was a passenger in a car, another vehicle collided with his vehicle, fracturing his back

1

and causing him significant neck, shoulder, and back pain.  [Dkt. 11 at 1-4].  Rochester was

diagnosed with fractures of the right L1-L4 transverse processes [Dkt. 7 at 414], cervical

spondylosis [Id. at 475], cervicalgia [Id. at 476], lumbosacral spondylosis [Id.], and chronic pain

syndrome [Id.], among other conditions.

     Prior to filing for disability benefits, Rochester worked in waste management at Allied

Waste Services of Massachusetts, as a mechanic at Pep Boy and LA Race, as a tractor trailer

driver, and as a worker at Breaker Fabrics.  [Id. at 44-45].  Following the accident, Rochester

stopped working.  [Id. at 44.].

     On May 25, 2021, Rochester filed a Title XVI application for Supplemental Security

Income ("SSI") [Id. at 197-206] and a Title II application for Social Security Disability Insurance

Benefits ("SSDI") [Id. at 207-11].  Rochester alleged disability beginning on June 8, 2020, after

the motor vehicle collision caused him ongoing neck, shoulder, and back pain.  [Dkt. 11 at 1-4].

Doctors and disability adjudicators determined Rochester "not disabled" on April 22, 2022 [Dkt.

7 at 77, 83], and again on September 21, 2022, following Rochester's request for reconsideration.

[Id. at 89, 96].  Rochester then participated in a telephone hearing before an ALJ on February 23,

2023, where he was represented by counsel.  [Id. at 42-68].  At that hearing, Rochester revised his

period of disability to a closed period beginning on June 8, 2020, and ending on January 13, 2022.

[Id. at 47].  The ALJ issued an unfavorable decision on May 9, 2023.  [Id. at 21-33].  Appeals

Council denied Rochester's request for review on December 8, 2023, rendering the ALJ's

decision the final decision of the Commissioner.  [Dkt. 1-1 at 2].

    **A.**    **Rochester's Testimony**

     At Rochester's hearing before the ALJ on February 23, 2023, Rochester testified to his

pain levels.  Rochester reported that his pain was at a six out of ten when walking a mile and to

alleviate that pain, he would need to rest for six hours.  [Dkt. 7 at 49-50].  Rochester testified he was able to sit for about one hour at a time, and to lift twenty pounds with pain and more than twenty pounds only with significant pain.  [Id. at 50-51].  Rochester noted that he was unable to sleep through the night due to pain.  [Id. at 57-58].  Rochester also testified to the side effects of his pain medications, causing tightness in his legs above his knees and difficulty closing his hand, which limited his ability to complete daily activities.  [Id. at 49-51].

B.      **Vocational Expert Meola's Testimony and Attorney Choi's Cross-Examination**

At the February 23, 2023 hearing, vocational expert Rocco Meola ("Meola") testified that a person of Rochester's age, education, and work experience with light work limitations would not be able to perform any of Rochester's past relevant work.  [Id. at 64-65].  Meola testified that some alternative jobs Rochester would be able to perform include ceiling machine operator, inspector/packer, and small parts assembler.  [Id. at 65].

At that same hearing, Rochester's counsel, Attorney Danielle Choi ("Choi"), cross-examined Meola.  [Id. at 65-66].  Choi introduced two hypotheticals.  [Id.].  Under Choi's first hypothetical, Choi asked Meola if there were any jobs Rochester could perform—even within the light work category—if Rochester required a sit/stand at will option, and while standing, required a ten-minute walking period.  [Id.].  With that limitation, Meola testified that Rochester could not perform any job in a competitive labor market.  [Id. at 66].

In Choi's second hypothetical, Choi asked Meola if there were any jobs Rochester could perform—even within the light work category—if Rochester had three limitations: (1) he could not reach over his head with his right arm; (2) he could only occasionally—one-third of the time—grasp large and small objects with his right hand; and, (3) he could only occasionally—one-third of the time—perform fine motor tasks with both hands.  [Id.].  With those limitations,

Meola responded that Rochester could not perform any job in a competitive labor market.  [Id. at 67].

### C.    Relevant Medical Records and Evidence

The ALJ primarily reviewed records related to the treatment of Rochester's neck and back pain.  [Id. at 46].

### 1.    Relevant Medical Records and Evidence

On June 8, 2020, the date of Rochester's car accident, a chest, abdomen, and pelvis CT scan was performed.  [Id. at 418-19].  That scan identified fractures of the right L1-L4 transverse processes.  [Id. at 419].  On that same date, after reviewing that scan, neurosurgeon Dr. Alvin Marcovici determined those fractures were stable, warranting only pain management.  [Id. at 391-92].  Rochester was advised the fractures would take six weeks to heal and that Rochester should not lift more than twenty pounds.  [Id. at 384].

In July 2020, Rochester followed-up with Dr. Marcovici, noting his pain increased to a level eight out of ten with activity and decreased with rest.  [Id. at 383].  On exam, Rochester had normal gait and motor strength, but limited range of motion.  [Id.].

### 2.    Southcoast Health and Fall River Spine & Disc Center Observations of Rochester from Consults, Physical Therapy, and X-Rays

Southcoast Health and Fall River Spine & Disc Center provided periodic observations of Rochester as he consulted with practitioners for physical therapy and pain management.  Those observations followed Rochester's progress intermittently from July 29, 2020, to January 13, 2022.  [Id. at 342-57, 362-84, 431-45, 458-580].

From August to September 2020, treatment notes reported improved range of motion and strength with initial physical therapy.  [Id. at 371].  Treatment notes in September 2020 detailed

that Rochester lifted and carried fifty pounds during physical therapy sessions and that he had no restrictions in overhead reaching.  [Id. at 372].

As of April 30, 2021, treatment notes indicated the lumbar fracture and acute midline lower back pain with sciatica had resolved.  [Id. at 431].  From April to May 2021, Rochester demonstrated substantial improvement, attaining maximum medical improvement with chiropractic care.  [Id. at 460, 462-63].  From November to December 2021, Rochester demonstrated progress with improved range of motion, strength, function, and decreased pain with physical therapy.  [Id. at 486].

An April 2022 x-ray of the lumbar spine was normal.  [Id. at 453].  Physical exams showed tenderness and decreased range of motion at times, but steady and normal gait, and no consistent motor, sensory, or acute neurological deficits.  [See generally id. at 342-580].  Physical exams through January 13, 2022, showed five out of five motor strength in the upper extremities. [Id. at 487-88].

### 3.    Dr. Kogan's Exam and Assessment of Rochester

Dr. Yacov Kogan examined Rochester on April 1, 2022.  On exam, Dr. Kogan reported the following under the "neurological" category and "motor" subcategory:

> [S]trength is 5/5 in the upper and lower extremities bilaterally, fine finger movements are *normal bilaterally*.  Bilateral hand grip is *strong and symmetric*.  Fine finger movements are *normal bilaterally* as the claimant uses both hands to manipulate his personal items briskly and with good dexterity.  There is normal muscle bulk and tone in the upper and lower extremities bilaterally.

[Id. at 455] (emphasis added).  Dr. Kogan then summarized the exam findings:

On current examination there are *no range of motion deficits and no neurological deficits* that limit sitting, standing, walking, bending, lifting, carrying, reaching or finger manipulations.  Work related activities involving sitting, standing, walking, bending, lifting, carrying, reaching, and [right-handed] manipulations *are mildly limited* due to symptoms of cervical spine, lumbar spine, [right] upper and [right] lower extremity pain.

[Id. at 456] (emphasis added).

### 4.    State Agency Consultants' Review of Rochester's Medical Record at the Initial and Reconsideration Levels of Review

Two state agency consultants reviewed Rochester's medical records at the initial and reconsideration levels of review.  At the initial level review, Dr. Henry Astarjian assessed the medical record as of April 22, 2022.  [Id. at 83].  Dr. Astarjian assessed Rochester's residual functional capacity ("RFC"), representing his "ability to do physical and mental work activities on a sustained basis despite limitations from his impairment," as "medium."  [Id. at 23, 82].  Five months later, at the reconsideration level, Dr. Stephanie Green reviewed Rochester's record as of September 21, 2022.  [Id. at 91].  Dr. Green found Rochester's condition had resolved, and Rochester was not impaired.  [Id. at 89, 96].  Because she did not find Rochester impaired, she did not assess RFC.  [Id. at 88, 95].

### D.    ALJ's Conclusions

In his decision, the ALJ found Rochester "not disabled" within the meaning of the Social Security Act ("the Act").  The SSA has established a five-step process to determine whether an individual is disabled under the Act.  20 C.F.R. §§ 404.1520, 416.920 (2024).  Steps are followed in order.  Id.  If an individual is found not disabled at any step in the process, the evaluation will conclude.  Id.

At step one, the ALJ determines if the individual is engaging in substantial gainful activity.  Here, there is no dispute—Rochester was not engaged in substantial gainful activity after his accident, during the reviewed period of disability.  [Dkt. 7 at 24].  At step two, the ALJ determines whether the individual has a severe medically determinable impairment.  Again, the ALJ did not dispute that Rochester had two severe impairments—lumbar transverse process fractures and cervical and lumbar spondylosis without myelopathy—which limited his ability to perform work activities.  [Id.].  At step three, the ALJ determines whether the individual's impairments are severe enough to meet the criteria of a listed impairment and if the impairment has lasted long enough to qualify for that listing.  If the ALJ makes that finding, the individual is presumptively disabled; and if not, the ALJ continues to step four.  The ALJ found Rochester's impairments were not severe enough to qualify as a listed impairment, so the ALJ continued to step four.  [Id.].

In this appeal, only steps four and five of the ALJ's analysis are at issue.  Prior to conducting the step four analysis, the ALJ determines the claimant's RFC, and based on that assessment, must decide in step four if the claimant has the RFC to perform past relevant work.  If the claimant cannot perform past relevant work, the ALJ determines in step five if the individual can do any other work considering his residual functional capacity, age, education, and work experience.

Here, the ALJ determined Rochester had the RFC to perform light work with a crawl limitation, even when considering the combined effects of his two severe impairments.  [Id.].  In step four, given that RFC, the ALJ determined Rochester could not perform any of his past relevant work, and thus continued to step five.  [Id. at 31].  But at step five, the ALJ relied on the vocational expert, who determined that jobs exist in the national economy for an individual of

Rochester's age, education, work experience, and RFC.  [Id. at 31-32].  Because such work was

identified, the ALJ found Rochester capable of making a successful adjustment to other work that

exists in significant numbers in the national economy and found Rochester "not disabled."  [Id. at

32].

**E.    ALJ's Analysis**

In making his determination, the ALJ reviewed Rochester's testimony, the vocational

expert's testimony, records and observations from Southcoast Health and Fall River Spine & Disc

Center, and the three medical opinions—those of the two state agency consultants, Dr. Astarjian

and Dr. Green, and that of Dr. Kogan.

The ALJ first reviewed the credibility of Rochester's testimony, which he partially

credited.  Rochester alleged ongoing pain from injuries sustained in the June 8, 2020 car accident.

The ALJ acknowledged Rochester's injuries could cause his symptoms [Id. at 25] but found the

record failed to support "the severity [of Rochester's pain] and resulting limitations" [Id. at 29].

The ALJ then turned to the three medical opinions in the record.  The ALJ rejected the

two state agency consultants' opinions, those of Drs. Astarjian and Green, finding the consultants

overstated Rochester's abilities, [Id. at 29-30], but found Dr. Kogan's opinion only "persuasive in

part."  [Id. at 30].

The ALJ found Drs. Astarjian and Green's opinions overestimated Rochester's abilities,

finding their opinions "not persuasive" and inconsistent with the record.  [Id. at 30].  The ALJ

rejected Dr. Astarjian's finding that Rochester was capable of medium exertional work and found

instead that Rochester was capable only of light work with a crawl limitation.  [Id.].  The ALJ

also rejected Dr. Green's finding that Rochester is not at all impaired and found instead that the record indicated Rochester's injuries would pose some limitations.  [Id.]

In reviewing Dr. Kogan's opinion, the ALJ found Dr. Kogan's exam and summary "persuasive in part."  [Id.].  The ALJ found the report "comprehensive and detailed concerning physical examination findings" and "informative regarding [Rochester's] alleged musculoskeletal impairments."  [Id.].  But the ALJ presented two criticisms of that exam and summary: (1) The ALJ found Dr. Kogan's assessment of limitations contradicted by his own exam; and (2) when weighed against the medical record, Dr. Kogan's report did not demonstrate Rochester was significantly limited in right-handed manipulation and reaching.  First, Dr. Kogan's report of mild limitations on Rochester's right-handed manipulations and reaching was contradicted by his own exam.  [Id.].  Dr. Kogan's exam reported "fine finger movements are normal bilaterally," "bilateral hand grip is strong," and Rochester has "good dexterity."  [Id. at 455].  But his summary reported Rochester was "mildly limited" in right-handed manipulation and reaching, with no definition of what the term "mild" means functionally.  [Id. at 30, 456].  Second, when weighed against the medical record as a whole—which does not otherwise report Rochester was limited in his ability to manipulate his right hand or reach above his head—Dr. Kogan's report did not persuasively demonstrate that Rochester was significantly limited in right-handed manipulation and reaching.  [Id. at 30-31].  Given these criticisms, the ALJ found Dr. Kogan's summary and exam, along with the other medical records, consistent with a finding that Rochester could perform light work with a crawl limitation, but not consistent with further limitation.  [Id. at 31].

The ALJ also reviewed Rochester's medical imaging and treatment notes, as well as the trajectory of his physical therapy. The ALJ noted that medical imaging on the date of the accident

indicated that his fractures were stable and warranted only pain management. [Id. at 26]. The ALJ then highlighted multiple records that support that premise. [Id. at 26, 28-29]. Such records include the June 8, 2020 CT scan and associated treatment notes indicating a stable fracture requiring only pain management [Id. at 26, 391-92], April 30, 2021 treatment notes that indicated the lumbar fracture condition and acute midline lower back pain with right sided sciatica had resolved [Id. at 29, 431], and a normal April 2022 x-ray of the lumbar spine. [Id. at 29, 453].

The ALJ noted exams during physical therapy showed "tenderness and decreased range of motion at times, but steady and normal gait, and no consistent motor, sensory, or acute neurological defects." [Id. at 29; see also 342-576]. The ALJ then highlighted records from Southcoast Health and Fall River Spine & Disc Center in support of that premise. [Id. at 342-576]. From August to September 2020, those treatment notes documented improved range of motion and strength with initial therapy, with Rochester able to lift and carry fifty pounds during physical therapy sessions and with no restrictions in overhead reaching [Id. at 29, 371-72]; from April to May 2021 they documented substantial improvement, "attaining maximum medical improvement from chiropractic care" [Id. at 29, 460, 462-63]; and, from September to December 2021 they documented increasing "progress with improved range of motion, strength, and function, along with decreased pain" [Id. at 29, 486].

Regarding the vocational expert's hearing testimony, the ALJ credited the vocational expert's opinion that even with a light work and crawl limitation, there was work Rochester could perform, including work as a Sealing Machine Operator, Insertor Packer, and Small Parts Assembler. [Id. at 32]. Thus, the ALJ found the vocational expert's testimony probative in

assessing that even with a light work and crawl limitation, there would be jobs available that Rochester could perform.

## II.    LEGAL STANDARD

The Court's review of this appeal of denial of SSI and SSDI benefits is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The ALJ's factual findings are conclusive if supported by "substantial evidence," and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981). The Court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Substantial-evidence review is more deferential than it may sound to the lay ear." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). The circumstances for reversing an ALJ decision are limited to legal or factual errors made by the ALJ or an absence of "evidence rationally adequate on the record as a whole to justify the conclusion" reached by the ALJ. Roman-Roman v. Comm'r of Soc. Sec., 114 F. App'x 410, 411 (1st Cir. 2004); see also Manso-Pizarro v. Sec'y of Health & Hum. Servs., 76 F.3d 15, 16 (1st Cir. 1996). The question before this Court is only whether the "ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

### III.    DISCUSSION

Rochester argues the ALJ erred in determining Rochester was not disabled under Sections

216(i), 223(d), and 1614(a)(3)(A) of the Act.  Specifically, Rochester argues the ALJ erred in

determining Rochester's RFC, finding Rochester capable of light work, with a crawl limitation.

Rochester argues that in determining Rochester was capable of light work, with a crawl

limitation, the ALJ failed to give proper consideration and weight to the opinion evidence of Dr.

Kogan, who suggested Rochester may have manipulative and reaching limitations that preclude

light work.  [Dkt. 11 at 7-8].  Rochester alleges such manipulative and reaching limitations

prevent him from engaging in light work, even with a crawl limitation.  [Id. at 12].  In rejecting,

in part, Dr. Kogan's opinion, Rochester argues the ALJ's analysis fails in two ways.  First, the

ALJ fails to consider whether Dr. Kogan's opinion is consistent with and supported by the record

as a whole; he argues the ALJ instead "cherry-pick[ed]" evidence that contradicts the opinion and

seeks to invalidate the opinion for its "vagueness."  [Id. at 6-12].  Second, the ALJ fails to

adequately explain both the basis for rejecting, in part, Dr. Kogan's opinion, and the basis

supporting the ALJ's finding that Rochester is capable of light work with a crawl limitation.  [Id.

at 11]. The Commissioner argues that the ALJ correctly applied the law and substantial evidence

supports his evaluation of the medical opinion evidence.  [Dkt. 14].

An "applicant's residual functional capacity is . . . an administrative finding reserved to

the Commissioner."  Purdy, 887 F.3d at 14 (citing 20 C.F.R. §§ 416.927(d)(2), 416.946 (2018)).

In assessing an individual's RFC, an ALJ must "evaluate the intensity and persistence of an

individual's symptoms such as pain and determine the extent to which an individual's symptoms

limit his or her ability to perform work-related activities," which he does by "examin[ing] the

entire case record, including the objective medical evidence; an individual's statements about the

intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018) (quoting SSR 16-3p, 82 Fed. Reg. 49462-03 (October 25, 2017)).

In determining the persuasiveness of a medical source opinion, the ALJ must consider the opinion's supportability, consistency, relationship, specialization, and other factors. See 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (2024). The most important factors to consider in assessing persuasiveness are "supportability" and "consistency." Id.; Vazquez v. Kijakazi, No. 20-CV-30176, 2022 WL 952764, at *12, *13 (D. Mass. Mar. 30, 2022).

In rejecting a medical opinion or other evidence and determining whether an opinion is supported by and consistent with the record, the ALJ must rely on the evidence as a whole and "may not cherry-pick evidence to support his or her findings without referencing contradictory evidence." Ares v. Berryhill, No. 16-CV-11439, 2017 WL 5484674, at *5 (D. Mass. Nov. 15, 2017); Bunner v. Berryhill, No. 16-CV-2370, 2018 WL 1558449, at *5 (D. Or. Mar. 30, 2018) (though the ALJ is charged with "resolving ambiguities in the record and conflicting testimony[,] . . . the ALJ must use the entire record and cannot cherry-pick sentences or phrases while ignoring the greater context."); see also Vazquez, 2022 WL 952764, at *13.

Similarly, in considering the weight of a medical opinion, the ALJ must adequately explain the basis for their findings. Regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination or decision." Martinez v. Kijakazi, No. 20-CV-30151, 2021 WL 5054477, at *9 (D. Mass. Oct. 29, 2021) (alterations in original) (quoting 20 C.F.R. § 404.1520(b)(2) (2021)). "When an agency has not considered all relevant factors in taking action, or has provided

insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency." Martinez, 2021 WL 5054477 at *11 (quoting Seavey v. Barnhart, 276 F.3d 1, 12 (1st Cir. 2001)) (remanding, in part, for ALJ's failure to evaluate the consistency factor). An administrative decision must explain the connection between the evidence and the conclusion reached. Dep't of Commerce v. New York, 588 U.S. 752, 773 (2019); see also Malone v. Colvin, 238 F. Supp. 3d 151, 164 (D. Mass. 2017) ("ALJ cannot reject evidence for no reason, or for the wrong reason, and must explain the basis for his findings.") (quoting Crosby v. Heckler, 638 F. Supp. 383, 385 (D. Mass. 1985)).

Here, the ALJ adequately and explicitly considered whether Dr. Kogan's opinion was supported by and consistent with the record. In finding the medical evidence and record "do not support disabling impairments" the ALJ "thoroughly evaluated the record, listened to the claimant's subjective complaints, and assessed the objective evidence in this case." [Dkt. 7 at 28]. Specifically, in addition to reviewing Dr. Kogan's opinion, the ALJ reviewed Rochester's testimony, testimony of the vocational expert, Rochester's timeline of physical therapy and associated medical records, and the two state agency medical opinions. [See Id. at 28-32]. In assessing the medical evidence and opinions, the ALJ made careful judgments as to the weight he gave to each piece of evidence. As described below, the ALJ neither uniformly credited evidence and opinions, which overstate Rochester's abilities, nor those that understate his abilities.

The ALJ reviewed Rochester's testimony in detail. But the ALJ noted that Rochester's testimony—describing difficulties closing his hand, tightness in his legs, his inability to lift twenty pounds without significant pain, and his need to sit for six hours after walking a mile— was contradicted by medical imaging, Southcoast Health and Fall River Spine & Disc Center treatment notes and exams, as well as by Dr. Kogan's exam. [Id. at 29, 49-51].

The ALJ highlighted that radiological imaging and treatment notes documented that Rochester's imaging was then normal and his conditions had largely resolved. [Id. at 29]. On the June 8, 2020 date of the accident, radiological imaging "showed lumbar transverse fractures, [but] cervical imaging was normal." [Id. at 29, 417-19]. By April 2022, an x-ray of the lumbar spine was also normal. [Id. at 29, 453]. Physical exams and therapy notes from Southcoast Health and Fall River Spine & Disc Center indicated that the lumbar fracture condition and the acute midline lower back pain with right side sciatica were resolved as of April 30, 2021. [Id. at 29, 431].

The ALJ also highlighted that physical exams and physical therapy notes contradicted Rochester's testimony regarding his pain and limitations. Rochester alleged that he cannot lift more than twenty pounds without significant pain and has range of motion restrictions. [Id. at 29, 49-51]. Treatment notes in September 2020 detail he was able to lift and carry fifty pounds during physical therapy sessions and had no restrictions in overhead reaching. [Id. at 29, 372]. Rochester alleged difficulties with grip, fine finger manipulation, and his need to sit for six hours after walking a mile. [Id. at 29, 49-51]. Exams during physical therapy showed tenderness and decreased range of motion at times, but steady and normal gait and no consistent motor, sensory, or acute neurological defects. [Id. at 29; see also 342-580]. Treatment notes from August to September 2020 document improved range of motion and strength with initial therapy. [Id. at 29, 371]. Notes from April to May 2021 show substantial improvement, attaining maximum medical improvement with chiropractic care [Id. at 29, 460-63], and notes from September to December 2021 show increasing progress with "improved range of motion, strength, and function, as well as decreased pain" [Id. at 29, 486].

In addition to reviewing Rochester's subjective complaints, physical therapy exams and treatment notes, and Dr. Kogan's opinion, the ALJ considered and rejected—as understating

Rochester's limitations—the two state agency medical opinions, those of Drs. Astarjian and Green. Those doctors claimed, respectively, that Rochester had "medium" functional capacity [Id. at 82], or no ongoing limitation [Id. at 88-89]. In reviewing those opinions, the ALJ detailed and cited to the entire medical record in finding the state agency consultants' opinions "not persuasive." [Id. at 30]. The ALJ was explicit that "the record as a whole supports slightly greater limitation" than what Dr. Astarjian describes, and that Rochester's ongoing records of physical therapy, chiropractic, and pain management treatment combined with his diagnosis of lumbar and cervical spondylosis contradict Dr. Green's assessment that Rochester's condition had fully resolved. [Id.] Here, where the ALJ rejected Drs. Astarjian and Green's opinions as understating Rochester's limitations, the ALJ demonstrated he had critically reviewed the record.

Only after conducting that full review of the medical evidence did the ALJ find that Dr. Kogan's opinion was consistent with a finding that Rochester was capable of light work with a crawl limitation [Id.], but that the "medical evidence falls short of demonstrating the existence of pain and limitations that are so severe that [Rochester] cannot perform any work on a regular and continuing basis." [Id. at 28-29].

In finding Dr. Kogan's opinion only "persuasive in part," the ALJ did not "cherry pick" from the exam findings or invalidate the report solely because of its "vagueness," as Rochester alleges, but the ALJ instead identified two objective concerns with Dr. Kogan's summary: First, Dr. Kogan's report of mild limitations in Rochester's ability to manipulate his right hand and to reach above his head was contradicted by Dr. Kogan's own exam. And second, when considered with the medical record as a whole—which did not report Rochester was limited in his ability to manipulate his right hand or reach above his head—Dr. Kogan's report did not persuasively demonstrate that Rochester was so limited. In outlining his objections to Dr. Kogan's report, the

ALJ effectively reviewed the record to find that Dr. Kogan's assessment was supported in part, but that Dr. Kogan's assessment was also contradicted by both Dr. Kogan's own exam and other parts of the record. The ALJ adequately explained both the basis for finding Dr. Kogan's opinion only "persuasive in part" and for finding that Rochester was capable of light work with a crawl limitation. In explicitly reviewing and weighing each piece of evidence in the record and describing why the ALJ found Dr. Kogan's opinion was contradicted both by his own exam and the trend of the medical record, the ALJ met his burden of resolving ambiguities and conflicting testimony in the record. In so doing, the ALJ appropriately explained why Dr. Kogan's opinion was inconsistent with the record.

Similarly, the ALJ's review of the record and comparison of the state agency medical opinions with the opinion of Dr. Kogan adequately analyzed and detailed why the ALJ concluded Rochester was capable of light work, with a crawl limitation. Based on Dr. Kogan's exam and the trend of the entire medical record, the ALJ reviewed and rejected Dr. Astarjian's assessment of "medium" function for Rochester, and Dr. Green's assessment that Rochester's impairment has fully resolved. The ALJ then considered Dr. Kogan's exam, along with the trend of the medical record, to determine Rochester was further limited than Dr. Astarjian's assessment of "medium" function, but not as limited as Dr. Kogan's summary describes. In so doing, the ALJ explained the connection between each piece of medical evidence he considered, as well as the basis for concluding Rochester was capable of light work, with a crawl limitation.

## IV.    CONCLUSION

For the foregoing reasons, Rochester's Motion for Order Reversing Decision of Commissioner [Dkt. 10] is **DENIED** and the Commissioner's Motion for Order Affirming Decision of Commissioner [Dkt. 13] is **GRANTED**.

**SO ORDERED.**

Dated: December 6, 2024                                     /s/ Angel Kelley
                                                        Hon. Angel Kelley
                                                        United States District Judge